UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA FARRO, MARILYN OWEN,

    Plaintiffs,

v.

SHIAWASSEE COUNTY ROAD
COMMISSION, MIKE CONSTINE,
Individually and in his capacity as
COMMISSIONER OF SHIAWASSEE
COUNTY ROAD COMMISSION,

    Defendants.
    _____/

Case No. 15-13982

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT [20]**

This matter is before the Court on Plaintiffs Linda Farro and Marilyn Owen's motion for leave to amend complaint. (Docket 20.) Plaintiffs' motion has set off a flurry of filing in this matter, including Defendants' response in opposition (dkt. 25), Plaintiffs' reply brief in support (dkt. 27), Defendants' ex parte motion for leave to file sur-reply brief (dkt. 29, granted 7/29/16), Defendants' sur-reply (dkt. 32) and Plaintiffs' response to Defendants' sur-reply (dkt. 33). The Court heard this motion on August 3, 2016.

**I.    FACTS**

Plaintiffs Linda Farro and Marilyn Owen brought this civil action against Defendants Shiawassee County Road Commission and Commissioner Mike Constine following their termination from employment with Defendant Shiawassee County Road Commission (the "Road Commission").

Plaintiff Owen began working for the Road Commission on January 17, 1999. (Compl. ¶ 14.) She was employed as payroll and clerk of the Board and had been performing essentially the same job duties from approximately 2006 until the time of discharge. (Comp. ¶ 18.) Plaintiff Farro began working for the Road Commission in June 1993. (Comp. ¶ 15.) Plaintiff Farro was employed as the receptionist for Benefits and Human Resources at the time of her firing and had been performing essentially the same job duties from approximately 2006 until her discharge. (Compl. ¶ 17.) Plaintiffs allege that prior to their discharge, Defendants pressured Plaintiffs to decertify from the American Federation of State, County and Municipal Employees (AFSCME) in order to maintain their employment. (Pls.' Mot. Amend 2, dkt. no. 20.)

Plaintiffs allege that from approximately October 2014 through February 2015, they were repeatedly told by Commissioners Constine and John Michalec, and Managing Directors Dean Welte and Brent Freiss, that the jobs they had been performing were now considered "confidential" and their jobs were in jeopardy due to their union membership, but if they decertified from the union their jobs would be secure. (Compl. ¶ 19.) For example, Plaintiffs allege that in December 2014, Welte told Plaintiff Owen "something to the effect of 'if you agree to decertify from the union, the labor attorney will write [employment] contracts for each one of you so you can keep doing the job.'" (Compl. ¶ 20.)

During the end of January 2015, Defendant Constine approached Plaintiff Farro and requested that Farro take a ride with him outside Shiawassee County, saying something to the effect of "I don't want anyone to see us together." (Compl. ¶¶ 21-22.) He and Farro drove to a gas station bordering Shiawassee and Genesee Counties at the corner of M-21 and M-13. (Compl. ¶ 23.) After parking the car, Constine engaged her in a discussion that

2

revolved around what Constine called a conflict because Farro was a union member performing "confidential" work that should be performed by non-union persons. (Compl. ¶¶ 24-25.) Defendant Constine explained that the conflict could be resolved by Farro and two other co-workers agreeing to decertify from the union; and Constine clearly implied that if Farro remained in the union she could not keep her job, due to the conflict, yet if they would agree to decertify, the conflict would be resolved, implying that they could keep their jobs. (Compl. ¶¶ 26-28.) Constine told Farro something to the effect of "we can resolve this, you girls get out of the union and you will be fine." (Compl. ¶ 28.) Plaintiffs relied on the representations of their boss Commissioner Constine and other representations, and agreed to decertify or leave the union, submitting their documentation to decertify on February 9, 2015. (Compl. ¶¶ 29-30.)

In April 2015, not long after Plaintiffs decertified from the union, Defendants terminated Plaintiffs' employment, which Plaintiffs allege was a violation of both federal and state anti-discrimination laws. (Compl. ¶¶ 30, 32.) At the time of discharge, Farro was 57 and Owen was 58. (Compl. ¶¶ 35, 36.) Plaintiffs allege that Farro's age was an important factor in discharging her because Defendants were able to avoid providing lifetime health benefits by terminating her prior to age 62. (Compl. ¶ 35.) They allege that Owen's age was an important factor in discharging her because Defendants were then able to hire a younger worker without providing the same level of benefits. (Compl. ¶ 36.) Further allegations related to the specific age and sex discrimination claims are set forth in the analysis below.

Plaintiffs' original complaint, filed on November 12, 2015, brought the following claims against their former employer and the commissioner: employment discrimination– disparate

treatment based on age, gender and sex in violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2202 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); employment discrimination–disparate impact (Count II); vicarious liability (Count III); and intentional infliction of emotional distress (Count IV). (Dkt. 1.) The amended complaint[1] contains the following claims: employment discrimination–disparate treatment based on age and sex (Count I); intentional infliction of emotional distress (County II); fraudulent misrepresentation and/or silent fraud (Count III); tortious interference with business relationship or expectancy (Count IV); and breach of contract and/or promissory estoppel (Count V). (Dkt. 27-4).

After filing the initial complaint in November 2015, Plaintiffs sought to amend their complaint under Fed. R. Civ. P. 15 to include new state tort claims against Defendants. (Dkt. no. 25, at 1, 4.) However, Defendants allege that the claims are barred under Michigan's governmental immunity doctrine.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides for amendments as a matter of course under certain circumstances, and in all other instances "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 also provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Grounds for denying leave to amend include the futility of the amendment. *See*

---

[1] Plaintiffs attached a proposed amended complaint to their motion for leave to amend (Pls.' Mot. Ex. A, dkt. 20), yet following Defendants' response, Plaintiffs attached a different proposed amended complaint to their reply brief (dkt. 27). Plaintiffs in their reply stipulate to dismissal of their disparate impact claim. The Court will treat this most recently filed first amended complaint as the final proposed amended complaint; it is at docket no. 27-4.

*Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

Defendants argue that Plaintiffs' amendments are futile and while Defendants have not filed a separate motion to dismiss, their futility argument rests on the allegation that Plaintiffs' amended complaint cannot survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Sixth Circuit noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n,* 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at 679; quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555

(citation omitted).

## III. ANALYSIS

### A. Plaintiffs' State Law Tort Claims

#### 1. Governmental Immunity

First, Defendants argue that Plaintiff's claims for intentional infliction of emotional distress (Count II), fraudulent misrepresentation/silent fraud (Count III) and tortious interference with a business relationship (Count IV) are pendant state law tort claims barred by Michigan's doctrine of governmental immunity and as such, would not survive a Rule 12(b)(6) motion.

"Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *See* Mich. Comp. Laws § 691.1407(1). Further, a governmental function is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Mich. Comp. Laws § 691.1401(b). There is no dispute that Defendant Shiawassee County Road Commission is a "political subdivision," as defined under Mich. Comp. Laws section 691.1401(e), and therefore a governmental agency. *See* Mich. Comp. Laws 691.1401(a), (e). Therefore, the issue is whether Defendant engaged in a governmental function, which requires the court to focus on the general activity "not the specific conduct involved at the time of the tort." *See Tate v. City of Grand Rapids*, 671 N.W.2d 84, 87 (Mich. Ct. App. 2003).

Here, Defendants argue that the Road Commission's liability stems from day to day operations and administration of personnel, which would render Plaintiffs' additional claims

futile. (Dkt no. 25, at 5-6.) Defendants argue that case law shows that the hiring, supervision, discipline, and discharge of a government employee is the exercise of a governmental function. *See O'Connor v. Redford Twp.*, No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009) (citing *Galli v. Kirkeby*, 398 Mich. 527, 537, 248 N.W.2d 149 (1976)). However, Plaintiffs' claim is that Defendants coerced Plaintiffs to decertify from AFSCME with promises of job security, yet discharged them shortly thereafter. (Dkt no. 20, at 20-21.)

A public employer or its officer may not "interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9," which provides that they may "[o]rganize together or form, join, or assist in labor organizations . . . ." Mich. Comp. Laws §§ 423.210, 209. Nor shall the public employer, officer or agent "[d]iscriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization." Mich. Comp. Laws § 423.210(c); *see also* Mich. Comp. Laws 423.410(3)(a) ("an individual shall not be required as a condition of . . . continuing public employment to . . . resign from membership in, . . . a labor organization."). "No person shall by force, intimidation, or unlawful threats compel or attempt to compel any public employee to . . . . (b) . . . refrain from joining a labor organization." *See* Mich. Comp. Laws § 423.209(2). Here, Defendants' allegedly made statements that Plaintiffs' membership in the union would jeopardize their jobs and if they remained in the union they could not keep their jobs. (Am. Comp. ¶¶ 19, 20, 25-28; Pl.'s Reply, Mot. to Amend. at 3.)

The Court finds Plaintiffs' reliance on *Marrocco v. Randlett*, 431 N.W.2d 68 (Mich. 1988), persuasive. The Michigan Supreme Court in *Marrocco* noted that in a prior case it had already established "a framework for analysis in its methodology for answering the .

. . question whether acts of lower level officials or governmental units are 'governmental functions.'" *Id.* at 708 (citing *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 661 (Mich. 1984) ("[A]ctivities which are not mandated or authorized by the people cannot be deemed governmental. When a governmental agency engages in such activities, it is acting for itself, rather than on behalf of the people. In these situations, the agency should be treated the same as a private tortfeasor.")). "The analysis is to look at the statutes (ordinances) to determine whether the act is in an area in which the governmental unit is authorized to function." *Id.*; *see also generally Logan v. Royal Oak Twp.*, 1996 WL 426532 (E.D. Mich. Jan. 24, 1996) ("When an employee commits an intentional tort within the scope of employment, a township can be liable to that tort, because such activities are not 'within the exercise or discharge of a governmental function.'") Given that it is a violation of Michigan law, pressuring employees to decertify from the union is likely not a part of the Road Commission's day to day operations or administration of personnel.

Further, Defendants argue that Commissioner Constine is immune from the asserted claims because he was acting within the scope of his executive authority. (Dkt no. 25, at 7.) Defendant cites Mich. Comp. Laws section 691.1407(5), which states that "[t]he . . . highest appointive executive official of all levels of government [is] immune from tort liability for injuries to persons . . . if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Determining whether a particular act is within the executive official's authority depends on the following factors: "the nature of the specific acts alleged, the position held by the official alleged to have performed the acts . . . the local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Bennett v. Detroit Police Chief*, 732 N.W.2d 164, 167-68

(Mich. Ct. App. 2006)(quoting *Marrocco v. Randlett*, 433 N.W.2d 68, 73 (Mich. 1988)).

In this case, Defendants state that Commissioner Constine, as a member of the Road Commission Board, is the highest elected executive official at his level of government. (Dkt no. 25, at 8.) Commissioner Constine's position has the executive power to administer the personnel and operation of the Road Commission, which includes the hiring, supervision, discipline, and discharge of government employees. *Id.* Plaintiffs agree that Commissioner Constine's executive power is an exercise of a governmental function; however, his "antiunion discussion" with Plaintiff Farro was not within the scope of his executive authority because it would be considered discouraging membership in a labor organization. Since this alleged conversation was a part of Defendants' pressure for Plaintiffs to decertify from the AFSCME, Commissioner Constine was not acting within the scope of his executive power and therefore was not exercising a governmental function and is not immune from suit.

2. **Whether the Public Employment Relations Act (PERA) Applies to Counts II, III, IV and V.**

Defendants argue that the Public Employment Relations Act ("PERA") gives exclusive jurisdiction over unfair labor practices such as those alleged in Plaintiffs' Counts II (intentional infliction of emotional distress), III (fraudulent misrepresentation/silent fraud), IV (tortious interference with business relationship or expectancy) and V (breach of contract and/or promissory estoppel) to the Michigan Employment Relations Commission ("MERC"). Under Defendants' analysis, each of these four claims "rely on allegations of labor misconduct exclusively prohibited by" Michigan's PERA. (Defs.' Sur-Reply 1.) As set forth above, a public employer or its officer may not interfere with, restrain, or coerce public

9

employees from supporting or affiliating with a labor organization or bargaining representative, nor may it "discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization." Mich. Comp. Laws §§ 423.209, .210(c). Mich. Comp. Laws § 423.216 provides that "[v]iolations of the provisions of section 10 shall be deemed to be unfair labor practices remediable by the commission." Therefore, argues Defendants, PERA provides that the claims fall within the exclusive jurisdiction of MERC.

Plaintiffs respond, however, that the cases cited by Defendants are distinguishable in that they involve unfair labor claims such as collective bargaining issues. *See e.g., Ramsey v. City of Pontiac*, 417 N.W.2d 489 (Mich. Ct. App. 1987); *St. Clair Intermediate School Dist. v. Intermediate Educ. Assoc.*, 581 N.W.2d 707 (Mich. 1998). Plaintiffs also distinguish Defendants' reliance on *Lamphere Schools v. Lamphere Federation of Teachers*, 252 N.W.2d 818 (Mich. 1977), by pointing out that the Michigan Supreme Court in *Lamphere* carved out a narrow preemption doctrine for claims exclusive to PERA. (Pls.' Sur-Reply 2.) Plaintiff argues that since *Lamphere*, courts have found that claims may be overlapping– they may involve union activity without invoking the PERA preemption. For example, in *Hearn v. County of Wayne*, 2013 LEXIS 21965 (E.D. Mich. Feb. 19, 2013) (Lawson, J.), the court found that Plaintiff's public policy claim was much narrower than the defendant's view. The defendant viewed the claim as one for retaliation for the plaintiff's exercising her rights to engage in union activity. *See id.* at *39. Yet the Court found that the plaintiff's claim was much more narrow, she alleged "that she was disciplined in response to her refusal to violate the law by failing to honor a subpoena." *Id.* at *39. The court found that it had jurisdiction over this claim. *Id.* at *40. The court noted that the "defendant has

not presented any authority suggesting that such a claim is preempted by the [PERA]; the only case the defendants cite on this issue deals with claims arising out of a strike prohibited by the [PERA] . . . ." *Id.* The court concluded that it had jurisdiction to entertain the plaintiff's claim. *Id.* at *40.

Here, it does not appear that Plaintiffs are alleging unfair labor claims disguised as common law torts. (Pls.' Reply to Sur-Reply 2, dkt. 33.) The cases cited by Defendants do not involve the factual scenario at bar – Plaintiffs are no longer represented by the union following Defendants' alleged inducement to leave the union and they do not seek redress for unfair labor practices. Plaintiffs do not seek to enforce rights under PERA and in the framing of Plaintiffs' issues, the Defendants' tactic – that of coercing Plaintiffs to separate from the union– was incidental to the goal– terminating the employment of these two female Plaintiffs, each over the age of 55.

### 3. Breach of Contract and/or Promissory Estoppel, Count V

The parties agree that a valid contract requires five elements: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v. State of Michigan*, 846 N.W.2d 583, 590 (Mich. Ct. App. 2014). Defendants argue that Plaintiffs have alleged no breach of any alleged written or verbal contract. Plaintiff couches their argument as having "accepted Defendants (sic) offer of employment contracts and secure employment by decertifying from AFSCME on February 13, 2015." (Pls.' Reply 9, citing Am. Compl. ¶ 30.)

The Michigan Supreme Court has held that

> [W]e note that the typical employment agreement is unilateral in nature. Generally, the employer makes an offer or promise which the employee accepts by performing the act upon which the promise is expressly or impliedly

> based. The employer's promise constitutes, in essence, the terms of the employment agreement; the employee's action or forebearance in reliance upon the employer's promise constitutes sufficient consideration to make the promise legally binding. In such circumstances, there is no contractual requirement that the promisee do more than perform the act upon which the promise is predicated in order to legally obligate the promisor.

*Toussaint v. Blue Cross & Blue Shield of Michigan,* 292 N.W.2d 880, 900 (Mich. 1980). In this instance the Court finds that Plaintiffs have plead enough to avoid dismissal of the breach of contract/promissory estoppel claim (Count V). (Am. Compl. ¶¶ 19-21, 25-30.)

### B. Whether The Discrimination Claims Can Be Asserted Against Defendant Constine In His Individual Capacity

Plaintiffs' reply appears to agree in part with Defendants that an individual supervisory official cannot be held individually liable under Title VII or the ADEA, yet Plaintiffs maintain that under the Michigan Elliot-Larsen Civil Rights Act (ELCRA), individuals can be held personally liable for their actions. The Court will dismiss the Title VII and ADEA claims against Defendant Constine, and allow Plaintiffs to file an amended complaint without these claims against Defendant Constine as they would be futile. *See Loffredo v. Daimler AG*, 54 F. Supp. 3d 729, 735 (E.D. Mich. 2014) ("Title VII's remedial provisions are incompatible with the imposition of liability on individual employees." (citing *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997))). However, such claims against Defendant Constine are allowable under ELCRA. *See Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 857-58 (Mich. 2005) ("As previously set forth, the statute expressly defines an 'employer' as a 'person,' which is defined under MCL 37.2103(g) to include a corporation, and also states that an 'employer' includes an 'agent of that person.' MCL 37.2201(a) . . . Accordingly, we reject the argument that including 'agent' within the definition of 'employer' serves only to provide vicarious liability for the agent's employer and we conclude that it also serves to create

individual liability for an employer's agent.")

### C. Whether Count I, Discrimination, Makes A Prima Facie Claim For Disparate Treatment

Defendants argue that Plaintiffs fail to make out a prima facie claim for disparate treatment based on age or sex. The Court disagrees with respect to the ADEA claims. For ADEA claims, a plaintiff may establish a prima facie case of age discrimination by producing direct or circumstantial evidence. *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009). Plaintiffs have plead both direct and indirect evidence of discriminatory intent, for example, the allegation that "Plaintiffs were instructed in the past by Defendants while sorting resumes for truck drivers that Plaintiffs were to remove the resumes of applicants 40 and older as they would not be considered for any position with Defendants." (Am. Compl. ¶ 39); *see generally Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (a "facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent.").

In order to sustain an ADEA claim (or Title VII sex discrimination claim) under the *McDonnell Douglas Corporation v. Green*, 441 U.S. 792 (1973), standard in analyzing circumstantial evidence, the plaintiff must show that he or she: (1) belonged to a protected class (e.g., was over 40 years of age); (2) suffered adverse employment action; (3) was qualified for the position held when the adverse action was taken; and (4) was replaced by

a younger worker (or treated less favorably than someone outside their protected class). *See DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir.2004),overruled on other grounds, (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159–60 (6th Cir.1990)); *see also Isotalo v. Kelly Servs., Inc.,* 2013 WL 5913839, at * (E.D. Mich. Nov. 4, 2013) (Edmunds, J.) (noting that "[a]lthough the Supreme Court, in *Gross v. FBL Financial Servs., Inc.*, indicated that they would not determine whether the *McDonnell Douglas* analysis applies to ADEA claims, the Sixth Circuit generally applies it in analyzing circumstantial evidence.").

Plaintiffs allege that they were members of protected categories (over age 40 and female) when the adverse action–termination of their employment–took place. (Am. Compl. ¶¶ 9, 35, 36.). They also allege that they were qualified for their positions. (Am. Compl. ¶¶ 40, 62-64.). Finally, they allege that younger replacements were hired for their positions and they were treated less favorably than someone outside the class: younger individuals and/or males. (Am. Compl. ¶¶ 33, 36, 38, 41-48.) With respect to the gender-related claims, Plaintiffs fail to make allegations with the specificity necessary to survive a motion to dismiss. Plaintiffs' allegations are too general to "permit the court to infer more than the mere possibility of misconduct," for example, Plaintiffs allege that they "believe similarly situation male employees were offered promotions, higher pay and job transfers, even in cases where they were not qualified, . . . ." (Am. Compl. ¶ 41, e.g., ¶¶ 42, 43, 46, 62-65.) At the hearing Plaintiffs admitted they need discovery on issues related to their allegations of unequal pay and failure to promote based on gender, yet were unable to identify a factual basis for their belief that this occurred. Plaintiffs cannot engage in a fishing expedition. Plaintiffs have not pled their sex discrimination claims with sufficient factual matter to state a plausible claim for relief. With respect to the age-related claims, Plaintiffs

have met the bar to avoid dismissal under Rule 12(b)(6).

### D. Prejudice To Defendants

Defendants argue that "an amendment to a complaint prejudices a party where the amendment will require the party to prepare an additional defense strategy and expend additional resources to defend against new claims." (Defs.' Resp. 20). Some discovery is underway, yet not completed; Defendants argue that Plaintiffs owed discovery responses to Defendants after filing their motion, and that Plaintiffs had served "extensive" discovery requests on Defendants just prior to the filing of Plaintiffs' motion. (Defs.' Resp. 20 n.15.) Plaintiffs argue that no prejudice will result for Defendants because the case is still in the initial stages of discovery and trial is not scheduled for at least six months. (Dkt. 20, at 3.) The Court finds little prejudice in allowing Plaintiffs to amend the complaint–discovery is not complete and the operative facts have changed very little.

## IV. CONCLUSION

For the reasons set forth above the Court:

- DENIES Plaintiffs' motion to amend (dkt. 20) in part as to the ADEA and Title VII claims against individual Defendant Constine;
- DENIES Plaintiffs' motion to amend (dkt. 20) as to the sex discrimination claims arising under Title VII and ELCRA;
- GRANTS the remainder of Plaintiffs' motion for leave to amend complaint; and
- DENIES Defendants' requests for costs, fees and sanctions.

**Plaintiffs have 5 days from entry of this order to file their First Amended Complaint and Jury Demand, which shall be as filed at docket 27-4, but shall not**

**include the ADEA and Title VII claims against the individual Defendant Constine and shall not include the disparate treatment and ELCRA claims based on sex.**

SO ORDERED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: August 24, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 24, 2016, by electronic and/or ordinary mail.

> s/Carol J. Bethel
> Case Manager